

**ORDERED in the Southern District of Florida on October 18, 2013.**

Laurel M. Isicoff, Judge
United States Bankruptcy Court

TAGGED OPINION
_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Case No. 09-33043-BKC-LMI |
| | Chapter 7 |
| FABRIZIO DULCETTI NEVES, | |
| Debtor. | |
| _____/ | |
| MARKWOOD INVESTMENTS LTD. | Adv. Pro. No. 10-02122-LMI |
| and GOLDEN DAWN CORPORATION, | |
| Plaintiffs, | |
| v. | |
| FABRIZIO DULCETTI NEVES, | |
| Defendant/Debtor. | |
| _____/ | |

**ORDER GRANTING PLAINTIFFS' MOTION TO STRIKE
DEFENDANT'S DEMAND FOR JURY TRIAL**

This matter came before the Court on January 3 and 19, 2012, on the Defendant's

Demand for Jury Trial (ECF #469) and the Plaintiffs' Motion to Strike Jury Trial Demand (ECF

#492). For the reasons set forth below the Motion to Strike is granted and the Defendant's Demand for Jury Trial is stricken.[1]

## Procedural Background

The acrimony between the Plaintiffs, Markwood Investments Ltd. and Golden Dawn Corporation (collectively the "Plaintiffs), and the Defendant, Fabrizio Dulcetti Neves ("Neves" or the "Debtor"), started long before this bankruptcy case was filed on October 23, 2009, but the issue before this Court involves only post-bankruptcy events, and so those are the only facts that the Court will outline. The procedural facts are lengthy, but nonetheless require a full review in order to appreciate the current procedural posture of the case.

This adversary proceeding, which is now on its Fourth Amended Complaint and 723rd docket entry, began with a complaint filed on January 25, 2010,[2] seeking to determine the dischargeability of debt under 11 U.S.C. §523(a)(2)(4) and (a)(6), liquidation of that debt and entry of a money judgment on same, and further seeking denial of the Debtor's discharge under 11 U.S.C. §727(a)(2), (a)(3), (a)(4) and (a)(5).

On February 26, 2010 the Debtor filed an Answer and Affirmative Defenses[3] and a Counterclaim.[4] The Counterclaim sought a declaration that the Plaintiffs do not have any claims against the Debtor or the bankruptcy estate because the Debtor's claims against the Plaintiffs exceeded the value of any claims the Plaintiffs asserted against the Debtor. The Counterclaim also alleged that it was a core proceeding.

---

[1] The following constitute this Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. To the extent that it were to be held that, for whatever reason, this Court did not have final jurisdiction to enter this Order, notwithstanding Judge Moore's direction that this Court does have such jurisdiction, *see Order Denying Defendant's Motion to Withdraw Reference dated August 30, 2012 (ECF #590),* then the following constitute this Court's proposed findings of fact and conclusions of law pursuant to 28 U.S.C. §157(c)(1).
[2] ECF #1.
[3] ECF #7.
[4] ECF #8.

The Plaintiffs each also filed a proof of claim (collectively the "Claims"), to which Claims the Debtor filed a consolidated claim objection (the "Claim Objection") on May 6, 2010. The Plaintiffs then filed a Motion to Amend the Complaint,[5] which was granted.[6] The Second Amended Complaint sought the same relief against the Debtor as was plead in the original Complaint, but the Plaintiffs added significant additional facts in support of the relief sought.

The Debtor filed a Motion to Dismiss[7] this First Amended Complaint alleging that the pleading failed to meet the standards of Federal Rules of Civil Procedure 9, or 12(b)(6), and those articulated by the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The Debtor also sought to strike certain allegations as scandalous or immaterial. The Court granted this Motion to Dismiss as well.[8]

In accordance with the Order of Dismissal, on November 5, 2010, the Plaintiffs filed a Second Amended Complaint,[9] eliminating certain allegations that this Court ruled were irrelevant to the relief sought, and seeking to correct the failings of the First Amended Complaint, which this Court held constituted an impermissible "shotgun pleading."[10] The relief sought in this Second Amended Complaint was the same as that requested in the original complaint and First Amended Complaint.

Once again, the Debtor sought dismissal of the complaint, this time arguing that this Court did "not have subject matter jurisdiction to liquidate Plaintiffs' non-bankruptcy claims and enter a money judgment in their favor in this adversary proceeding," that the Court did not have jurisdiction to rule on personal injury claims, and finally, arguing that the relief sought in the

---

[5] ECF #74.
[6] ECF #80.
[7] ECF #96.
[8] ECF #138.
[9] ECF #151.
[10] *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).

Second Amended Complaint was not adequately pleaded.[11] At the conclusion of this pleading, and for the first time, Neves, citing *Merrill v. Heller (In re Merrill),* 594 F.2d 1064, 1068 (5th Cir. 1979), expressly reserved the right to demand a jury trial "on any underlying non-bankruptcy claims that the Plaintiffs may seek to try in this adversary proceeding."

After the Motion to Dismiss the Second Amended Complaint was filed, but before this Court ruled on the motion, the Debtor failed to appear for a deposition and instead left the United States and returned to Brazil. This precipitated Plaintiffs' Motion for Default Judgment,[12] in response[13] to which the Debtor reiterated this Court's lack of jurisdiction to enter a money judgment and also cited the Debtor's voluntary waiver of his discharge,[14] which waiver this Court approved on February 7, 2011.[15]

On March 4, 2011, this Court denied the Motion to Dismiss the Second Amended Complaint, but struck several counts of the Second Amended Complaint due to the Debtor's waiver of discharge, and ordered the Debtor to either file a response to the Second Amended Complaint or proceed with the Claim Objection in the main case. In response to this Order, the Debtor filed another Motion to Dismiss the Adversary Proceeding, or alternatively, for Mandatory Abstention,[16] arguing that in light of the waiver of discharge, this Court had no jurisdiction to grant the remaining relief sought in the adversary proceeding—the enforceable money judgments against the Debtor. The Debtor asserted that he had no standing to proceed with the Claim Objection because there would not be enough recovery in the case to pay all of the creditors in full, and moreover, there would be no benefit or detriment to the estate arising

---

[11] ECF #172.
[12] ECF #187.
[13] ECF #209.
[14] *In re Neves*, Case No. 09-33043-BKC-LMI, ECF #324.
[15] *Id.*, ECF #355.
[16] ECF #267.

4

from this Court's ruling in the adversary proceeding.[17] The Debtor also moved to withdraw his Claim Objection.

The Court denied the Debtor's Motion to Dismiss the Second Amended Complaint, for the reasons set forth in a detailed ruling dictated into the record.[18] The Court reiterated its authority to enter a money judgment in connection with a dischargeability action; the Court held that the Debtor could not, by waiving discharge, divest the Court of jurisdiction of the adversary proceeding; and, further held that, in light of the waiver of discharge, the Debtor did have standing to prosecute the Claim Objection and the failure to do so might have res judicata or collateral estoppel consequences in a subsequent proceeding.[19]

At the conclusion of the hearing on this Motion to Dismiss, and after this Court's ruling, the Debtor withdrew his motion to withdraw the Claim Objection, asked that the Claim Objection be consolidated with the adversary proceeding, and also requested that the complaint be restated in terms of state law causes of action, to each of which suggestions the Plaintiffs had no objection.[20] Debtor's counsel also announced that the Debtor was deciding whether to seek a jury trial on the restated complaint. The Debtor subsequently filed a motion for leave to appeal this Court's order denying the Motion to Dismiss the Second Amended Complaint[21] which motion the District Court ultimately granted.[22]

Meanwhile, the Plaintiffs filed their Third Amended Complaint,[23] in response to which the Debtor filed another Motion to Dismiss, Motion for More Definite Statement, and other

---

[17] The Debtor also raised several arguments in support of abstention, all of which the Court rejected.
[18] *See* ECF #331 for transcript of the Court's ruling. *See* ECF #338 for written order.
[19] The Court did not make any findings on this issue, suggesting the parties could argue the impact of the claim allowance before whatever tribunal ultimately considered the issue of res judicata or collateral estoppel.
[20] Hearing Transcript on Motion to Dismiss at pp. 46-47, ECF #331.
[21] ECF #344.
[22] ECF #422.
[23] ECF #357.

relief.[24] In this Third Amended Complaint, the Plaintiffs restated, as the Debtor had requested, the section 523 counts as state law claims.[25] The Debtor argued that now that the complaint restated the relief requested in terms of state law causes of action, the Debtor could reargue the pleading inadequacy of the claims and the complaint failed to state a cause of action with respect to each of the counts. The Motion to Dismiss also alleged that the Court lacks subject matter jurisdiction to adjudicate purely state law causes of action, citing to *Stern v. Marshall,* 131 S.Ct. 2594 (2011).

The Debtor also filed a Notice of Dismissal of the Consolidated Claim Objection, or alternatively a request to dismiss the Claim Objection.[26] The Court conducted a hearing on the Motion to Dismiss and the Notice of Dismissal on October 31, 2013,[27] and other than directing the Plaintiffs to make minor adjustments to the Third Amended Complaint, denied the Motion to Dismiss.[28]

On November 7, 2011, the Plaintiffs filed their Fourth Amended Complaint.[29] On January 3, 2012, the Debtor filed a Demand for Jury Trial[30] (the "Demand") and a Motion for Withdrawal of Reference.[31] The Debtor also filed a Motion to Strike or for More Definite Statement with respect to certain allegations of the Fourth Amended Complaint. The Court denied the Motion to Strike with one very limited exception and ordered the Debtor to file an

---

[24] ECF #375.
[25] The counts of the Third Amended Complaint are: Count 1 – Fraud; Count II – Action on the Consolidated Note; Count III – Reestablishment of the Second Note; Count IV – Reformation of Second Note; Count V – Action on the Second Note; and Count VI – Action on the Third Note.
[26] ECF #415. The Debtor requested alternative relief because, he argued, the Claim Objection wasn't technically "an answer" because the Claim Objection was never "officially consolidated" with the adversary proceeding. But, the Debtor argued, if the Claim Objection was treated as an answer, the Debtor should be able to voluntarily dismiss.
[27] Hearing Transcript on Motion to Dismiss, ECF #420.
[28] ECF #431.
[29] ECF #419.
[30] ECF #469.
[31] ECF #470.

actual answer to the Fourth Amended Complaint, which the Debtor did.[32] Plaintiffs moved to strike the Demand[33] asserting first, the Demand was untimely, and second, the Debtor is not entitled to a jury trial. This Court held a hearing on the Demand on February 15, 2012, resulting in this Court's order conditionally granting the Motion to Strike the Demand.[34]

In response to the Court's invitation at the hearing on the Demand,[35] the Debtor filed a Motion to Dismiss the Fourth Amended Complaint. Rather than arguing that no controversy existed because the Claim was deemed allowed for bankruptcy purposes, the Debtor once again argued that the Court did not have jurisdiction to liquidate claims against the Debtor in the context of a discharge adversary, and moreover, once the discharge was waived, there was no "lingering jurisdiction." In other words, the Debtor was advancing, once again, the same argument that this Court had repeatedly rejected and that was, at the time, being considered on appeal by the District Court.

---

[32] ECF #511.
[33] ECF #492.
[34] ECF #530. The Debtor was given three weeks to decide whether he wished to withdraw his answer and affirmative defenses or file a notice that he wished to leave the answer in place, which notice would also constitute a renewal of the Claim Objection. If the Debtor made the latter choice, the Demand would be deemed stricken.

> So I'm allowing you procedurally to think about what you want to do and whether you want to do one of two things, either you're objecting to this claim now by virtue of filing the answer or I will allow you to procedurally request the ability to go back and argue this motion to dismiss, if that's what you believe is the appropriate relief based on your withdrawal of your objection to claim. I'm going to allow you to do that. To think—to procedurally do what [sic], if you want to, but if you want to let that answer stand, because you can't have it both ways; then I'll treat is as a renewed objection to claim.
> Procedurally I am going to make this very clear: If there is no objection to claim, then we're done. The claim is allowed and you don't have a right to jury trial because there is nothing to adjudicate; we're done, and you take it up on appeal whether you believe that that's appropriate, or you can renew your motion to dismiss, okay, and say that the case should be dismissed because you withdrew your objection to claim and there's nothing to adjudicate, and I'll rule on it. . .

Hearing Transcript on Motion to Strike at pp. 58–59, ECF #540.
[35] The Court ruled at the hearing that the Demand was timely, but reserved ruling on the balance of the argument, pending the Debtor's decision.

The Court denied the Motion to Dismiss.[36] About this time the District Court ruled on the appeal, affirming this Court's ruling in all respects regarding this Court's ability to enter a money judgment and this Court's continuing jurisdiction over the litigation notwithstanding the Debtor's waiver of discharge.[37] In addition, the District Court[38] requested a report and recommendation from this Court on the Motion to Withdraw Reference, which, after it was clear the litigation would be ongoing, this Court issued.[39] The Court recommended that the District Court exercise its discretion to withdraw the reference based, in part, on the Demand. The District Court disagreed, denied the Motion to Withdraw Reference, and directed this Court to rule on the Demand. The District Court also ordered that, should this Court rule the Debtor was entitled to a jury trial, the matter should nonetheless stay with the Bankruptcy Court until all pretrial motions had been resolved and the case was ready for trial.

Although there was supplemental briefing on the Demand, this Court withheld ruling pending a mediation which this Court ordered. That mediation did not take place for over a year, during which time the Debtor returned from Brazil and retained his third set of lawyers. Although the mediation finally occurred, it was unsuccessful. The parties are ready for trial but await this Court's final ruling on the Demand.

## Analysis

The Debtor made his Demand for Jury Trial only after the Fourth Amended Complaint was filed. Although the Court held that the Demand was timely,[40] the Motion to Strike is nonetheless granted—the Debtor is not entitled to a jury trial because first, a debtor is not

---

[36] ECF #557.
[37] ECF #565. The District Court also rejected the Debtor's argument that *Stern v. Marshall* adversely impacted this Court's jurisdiction of the adversary proceeding.
[38] The District Court judge who ruled on the appeal is not the same District Court judge who ruled on the motion to withdraw the reference.
[39] ECF #570.
[40] *See supra* note 35.

entitled to a jury trial in a proceeding to determine dischargeability of a debt, including liquidation of that debt, and second, a debtor is not entitled to a jury trial in an adversary proceeding brought by a creditor in the bankruptcy adversary proceeding if it is a case over which bankruptcy jurisdiction is properly asserted, because a debtor, by filing bankruptcy, voluntarily submits to the jurisdiction of the bankruptcy court and waives any right to jury trial he, she, or it might otherwise have been entitled to.

The procedural recitation illustrates how this adversary proceeding, and the Claim Objection that has weaved in and out of the adversary proceeding like a confused merry-go-round horse, has progressed in a lurching and awkward path to its current procedural posture. Nonetheless, although this case now presents itself as one cast in state law claims, it remains one half of a two-part dispute to determine a debt and whether that debt is dischargeable.

The Debtor argued, unsuccessfully, both to this Court and to the District Court, that no bankruptcy court has the authority to liquidate a debt in connection with a complaint to determine the dischargeability of that debt, and that even if such jurisdiction had ever existed, once the Debtor waived his discharge that jurisdiction disappeared. Having lost those battles, the Debtor asserts his one remaining argument—that with respect to the liquidation of the Plaintiffs' claims, he is entitled to a jury trial.[41]

In support of this argument the Debtor cited to several cases in which the ruling court held that the debtor was entitled to a trial by jury with respect to the liquidation-of-claim portion of a non-dischargeability determination. Only two of the cases upon which the Debtor relied were decided under the Bankruptcy Code, and neither Code case provides authority for the relief the Debtor seeks. The other cases upon which the Debtor relied are cases that were decided

---

[41] The Court will assume, for purposes of this opinion, that the claims asserted by the Plaintiffs, were they to have been brought outside of a bankruptcy proceeding, are claims the adjudication of which would have entitled the Debtor to a jury trial.

before the Bankruptcy Code was enacted;[42] these cases are Bankruptcy Act[43] cases, and the litigation on which the opinions centered arose in connection with the Dischargeability Act.[44] The Bankruptcy Code superseded the Bankruptcy Act was and the jurisdictional procedures contained within, or relevant to, these former laws are not relevant to the current Bankruptcy Code structure on jurisdiction or determination of dischargeability of a debt.

The Debtor also relies on two cases decided under the Bankruptcy Code. The first case is *In re Banister*, 737 F. 2d 225 (2d Cir. 1984). However, the statement upon which the Debtor relies in *Banister* is clearly dicta; moreover, the *Banister* court relied on *In re Merrill*, 594 F.2d 1064,[45] a pre-Code case that the Fifth Circuit clearly does not believe has any post-Code relevance, having held in *Morrison v. Western Builders of Amarillo, Inc. (In re Morrison)*, 555 F.3d 473 (5th Cir. 2009), that bankruptcy courts have jurisdiction to liquidate claims in a dischargeability action. And, in *Porges v. Gruntal & Co. (In re Porges),* 44 F.3d 159, 165 (2d Cir. 1995), the Second Circuit appears to have receded from its holding in *Banister* by ruling that a bankruptcy court has the authority to reduce to judgment any claims asserted by a creditor in the context of a claim objection. The second Code case upon which the Debtor relies is *In re Hopper*, 112 B.R. 1009 (B.A.P. 9th Cir. 1990), in which case the court denied a creditor's

---

[42] *In re Copeland,* 412 F. Supp. 949, 954 (D. Del. 1976*)* and *Transp. Indemn. Co. v. Hofer Truck Sales,* 339 F. Supp. 247, 248 (D. Kan. 1971).

[43] The Bankruptcy Act of 1898.

[44] The Dischargeability Act, Pub. L. No. 91-467, §84 Stat. 990 (1970) (amended the Bankruptcy Act of 1938 and added a provision to the Act clarifying the bankruptcy court's jurisdiction to determine whether a debt was dischargeable).

[45] The Debtor argued that this Court is bound by the *Merrill* decision because it is a Fifth Circuit opinion that predates the Eleventh Circuit ruling in *Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir. 1981), adopting all Fifth Circuit precedent up to October 1, 1981, as Eleventh Circuit precedence. If the *Merrill* decision were a case decided under the Bankruptcy Code, rather than under a statute that has been superseded in its entirety, this might be a valid argument. However, a case decided under a law that no longer exists, while perhaps having some relevance as a reference, is not binding precedent. *Accord Patterson v. McLean Credit Union,* 491 U.S. 164, 173 (1989), *superseded by statute on other grounds*.

request for a jury trial in a dischargeability action. Thus, the Debtor has not provided any relevant authority to support the Demand.

In contrast, other than the 1984 *Banister* decision, virtually every court to consider the issue of whether the Bankruptcy Court has jurisdiction under the Bankruptcy Code to liquidate a claim in connection with a dischargeability action has found that jurisdiction exists and, directly or indirectly, has found that the debtor has no jury trial right associated with liquidation of that claim. *See, e.g.*, *N.I.S. Corp. v. Hallahan* (*In re Hallahan*), 936 F.2d 1496 (7th Cir. 1991); *Longo v. McLaren* (*In re McLaren*), 3 F.3d 958 (6th Cir. 1993); *In re Boricich*, 464 B.R. 335 (Bankr. N.D. Ill. 2011). *Accord Johnson v. Riebesell (In re Riebesell)*, 586 F.3d 782 (10th Cir. 2009); *In re Porges*, 44 F.3d 159.[46] Because the District Court has already held that this Court has the jurisdiction to liquidate the Plaintiffs' claims against the Debtor, and the jurisdiction to do so in this adversary proceeding, it follows that the Debtor has no right to a jury trial in this adversary proceeding.

The cases that have considered the jury trial issue in the context of a dischargeability action have identified three reasons why the bankruptcy court has jurisdiction to enter a final money judgment on damages and, which jurisdiction, consequently, excludes any right to jury trial. These are neatly summarized by the Tenth Circuit in *In re Riebesell*:

> The reasons usually given [why circuit courts have held that bankruptcy courts have jurisdiction to liquidate debts and enter monetary judgments in a dischargeability action] include: 1) determination of the debt lies within the

---

[46] Sometimes courts are not precise in their terminology when considering bankruptcy jurisdiction issues. In *Porges* the Second Circuit referred to the claim objection and the adversary proceeding at issue as being related to the bankruptcy case; but the Second Circuit made this reference generally rather than in the context of an analysis of jurisdiction under 28 U.S.C. §1334. Tellingly, when specifically considering the jurisdiction issue, the Second Circuit observed the adversary proceeding was, in fact, a core proceeding. In *Morrison*, 555 F.3d 473, Judge Jones wrote that while the bankruptcy court's authority to determine the existence and validity of the debt arises from its core jurisdiction, reduction of that debt to a judgment is not part of the bankruptcy court's enumerated core matters. Nonetheless "[t]here would be no judicial efficiency in requiring the beneficiary of a non-dischargeability judgment to pursue a separate lawsuit in state or federal court in order to secure a money judgment against the debtor", and, therefore, the bankruptcy court had authority to enter such final judgment. *Id*. at 479.

> equitable jurisdiction of the bankruptcy court; (2) the debtor by filing bankruptcy has consented to jurisdiction of the bankruptcy court over matters necessary to the determination of adversarial [sic] proceedings; and 3) judicial economy and efficiency require that the bankruptcy court be empowered to settle both the dischargeability of the debt and the amount of the monetary judgment.

586 F.3d at 793.

The determination whether a claim is non-dischargeable is a core matter.[47] Thus, the filing of this adversary proceeding invoked this Court's core jurisdiction. And, the Debtor admitted, indeed, affirmatively alleged, that this Court's jurisdiction over the entire dispute was core, in his original answer. "It has long been the rule that bankruptcy courts sit as courts of equity . . . and once a court sitting in equity has jurisdiction over the parties to a controversy brought before it, the court can decide all disputed matters and decree complete relief." *In re Porges,* 44 F.3d at 165 (citations omitted); *In re Riebesell,* 586 F.3d at 793; *In re Hallahan,* 936 F.2d at 1508; *In re Beck Indus.,* 605 F.2d 624, 634 (2d Cir. 1979); *Abramowitz v. Palmer,* 999 F.2d 1274, 1279 (8th Cir. 1993); *cf. Alexander v. Hillman,* 296 U.S. 222, 242 (1935) (equity receivership case emphasizing the general rule of courts of equity that "having jurisdiction of the parties to controversies brought before them, they will decide all matters in dispute and decree complete relief"). Because liquidation of a claim is, most times, integral to the determination of non-dischargeability of that claim, as well as determination of the debtor-creditor relationship in the bankruptcy case, the liquidation of the claim is tied to the core jurisdiction of the bankruptcy court as well because the dispute and its complete resolution invoke the court's equitable jurisdiction. *See Dragisic v. Boricich*, 464 B.R. 335 (Bankr. N.D. Ill. 2011); *In re Carroll*, 464 B.R. 293 (Bankr. N.D. Tex. 2011); *see also Stern,* 131 S.Ct. at 2618 (the bankruptcy court's

---

[47] 11 U.S.C. §157(b)(2)(I). *See In re McLaren*, 3 F.3d at 960; *In re Carroll*, 464 B.R. 293 (Bankr. N.D. Tex. 2011).

jurisdiction extends to actions that "would necessarily be resolved in the claims allowance process").

The Debtor counters that this Court's core jurisdiction is no longer implicated because once the discharge was waived, and the Claim Objection was withdrawn, there is no impact on the bankruptcy estate. The Debtor is wrong for several reasons. In a complaint to determine dischargeability of a debt there are always two issues—one is a determination of what is the debt (although sometimes this has already been resolved by a state court)[48] and the other is the determination whether that debt is non-dischargeable. *See In re Riebesell,* 586 F.3d at 793*; RTC v. McKendry (In re McKendry),* 40 F.3d 331, 336-37 (10th Cir. 1994). The Debtor's waiver of his discharge no more divested this Court of jurisdiction to liquidate the claim than would have a determination by this Court that the debt was non-dischargeable before actually liquidating the claim—the two issues are intertwined, no matter in which order and however resolved, whether through consent or final adjudication.

The District Court has already affirmed that the Debtor's waiver of his discharge did not annul this Court's initial unquestionable jurisdiction over this adversary proceeding to determine dischargeability of debt; this Court will not repeat its ruling or the District Court's ruling here. Nor did the Debtor's waiver of discharge or withdrawal of the Claim Objection alter the nature of this Court's jurisdiction. This Court had core jurisdiction over this entire dispute, and consistent with this Court's ruling and the District Court's affirmance, that core jurisdiction was not altered by the Debtor's subsequent acts. To hold otherwise would render meaningless this Court's prior ruling on its retention of jurisdiction.

---

[48] *In re Heckert,* 272 F.3d 253 (4th Cir. 2001) (Bankruptcy court may not enter a new money judgment on damages in a discharge proceeding if the state court has already issued a judgment). *But see In re Sasson,* 424 F.3d 864 (9th Cir. 2005) (collateral estoppel did not prevent the bankruptcy court from entering its own money judgment in a dischargeability proceeding notwithstanding the state court judgment).

13

The Debtor's argument that a jury trial is required because the ruling in this adversary proceeding will not have any impact on this bankruptcy estate is equally unavailing. The Court's continuing jurisdiction derives from its initial core jurisdiction. Moreover, core matters are not limited only to those that have an impact on the estate, but include all matters that fundamentally relate to readjustment of the debtor-creditor relationship.[49] *Accord Stern*, 131 S. Ct. at 2629.

As recognized by the Second Circuit in *Porges*, the Court's appropriate exercise of its authority to determine the dischargeability of a debt is not only necessarily decided by the dispute, but also clearly authorized by 28 U.S.C. §157(b)(1)[50] and 11 U.S.C. §105.[51] 44 F.3d at 105. *See In re Morrison,* 555 F.3d at 479 (the bankruptcy court's jurisdiction to liquidate the claim is related to the bankruptcy case due to judicial economy and the bankruptcy court's ability to "enter appropriate orders and judgments." 28 U.S.C. §157(b)(1)).

Finally, courts have held that the bankruptcy court has jurisdiction to liquidate a debt in the context of a complaint to determine dischargeability of that debt, and the consequent loss of any right to a jury trial, even if such jury trial right would exist to resolve the dispute in a non-bankruptcy context, because the debtor himself voluntarily submitted to the jurisdiction of the

---

[49] In many cases in which a complaint to determine non-dischargeability of debt is filed, the resolution of the complaint will have little or no impact on the bankruptcy estate. Complaints to determine non-dischargeability of debt (including liquidation of that debt) are often filed by credit card companies in no-asset chapter 7 cases, the resolution of which complaint will have no impact whatsoever on the bankruptcy estate. Nonetheless, the bankruptcy court's core jurisdiction over these disputes is not debatable.

[50] 28 U.S.C. §157(b)(1): "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, *and may enter appropriate orders and judgments*, subject to review under section 158 of this title" (emphasis added).

[51] 11 U.S.C. §105(a):
> *The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.* No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process (emphasis added).

bankruptcy court, thereby waiving his right to a jury trial.[52]  As summarized by the Sixth Circuit in *In re McLaren,*

> [I]f creditors "by presenting their claims ... subject[ ] themselves to all the consequences that attach to an appearance," thereby losing any jury trial right otherwise guaranteed by the Seventh Amendment, debtors who initially choose to invoke the bankruptcy court's jurisdiction to seek protection from their creditors cannot be endowed with any stronger right. A defendant or potential defendant to an action at law cannot initiate bankruptcy proceedings, thus forcing creditors to come to bankruptcy court to collect their claims, and simultaneously complain that the bankruptcy forum denies him or her a jury trial.

3 F.3d at 960 *(referring to Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989)).[53] *See Hallahan*, 936 F.2d at 1505-06.

The Supreme Court has addressed a party's right to a jury trial in a bankruptcy matter many times.  The focus of each case in which the Supreme Court considered the issue is the party's voluntary or involuntary submission to the jurisdiction of the bankruptcy court of a dispute that would otherwise trigger the right to jury trial.  *See Granfinanciera*, 492 U.S. at 58-59.[54]

The Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code.  He sought the jurisdiction of this Court to adjudicate all matters relating to his debtor-creditor relationships.  The Debtor cannot now complain that his choice of venue deprived him of a right that he might have been entitled to had he not chosen to file bankruptcy.

## Conclusion

The right to a jury trial in bankruptcy proceedings has been addressed by the Supreme Court, as well as by many lower courts, many times.  While a bankruptcy court may conduct a

---

[52] There are limited exceptions to this, none of which are applicable here.

[53] Nothing in the holding of *Stern v. Marshall* changes this analysis, but even if there was some nuance of *Stern* on which the Debtor could hook a claim, that argument is foreclosed for this Debtor, as it has already been considered, and rejected, by the District Court on appeal.

[54] In *Hallahan*, 936 F.2d at 1508 n.10, the Seventh Circuit inferred that the issue of waiver of the jury trial right might be resolved differently if the debtor was the subject of an involuntary bankruptcy petition.

jury trial with the consent of all parties, the bankruptcy court's ability to conduct a jury trial is separate from the issue of whether a party in entitled to a jury trial at all.  Nonetheless, the law is clear: a party who voluntarily subjects itself to the jurisdiction of the bankruptcy court cannot then seek final adjudication of its rights by a jury.  While there are limits to the "voluntariness" of a creditor who files a claim in a bankruptcy case,[55] there is no such issue when a debtor files a voluntary bankruptcy petition.   The Debtor, Fabrizio Dulcetti Neves, sought the protection of this Court when he filed his bankruptcy case, thereby voluntarily subjecting himself to the jurisdiction of this Court, including the resolution of this adversary proceeding.  Because the Debtor is not entitled to a jury trial the Demand is stricken.  The parties will proceed to trial before this Court on February 24, 2014, as currently scheduled.

###

Copies furnished to:
Jose A. Casal, Esq.
Joanne Gelfand, Esq.

*Attorney Casal shall serve a conformed copy of this order upon all parties in interest and shall file a Certificate of Service of same with the Clerk of the Court.*

---

[55] *See Stern*, 131 S. Ct. at 2616-2617.