

ORDERED in the Southern District of Florida on December 11, 2014.

Laurel M. Isicoff, Judge
United States Bankruptcy Court

TAGGED OPINION

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Case No. 09-33043-BKC-LMI |
| FABRIZIO DULCETTI NEVES, | Chapter 7 |
|     Debtor. _____/ | |
| MARKWOOD INVESTMENTS LTD. and GOLDEN DAWN CORPORATION, | Adv. Pro. No. 10-02122-LMI |
|     Plaintiffs, v. | |
| FABRIZIO DULCETTI NEVES, | |
|     Defendant. _____/ | |

**MEMORANDUM OPINION ON RULINGS ON REQUEST FOR DE BENE ESSE
DEPOSITION AND VIDEO APPEARANCE AT TRIAL**

The battles between the Plaintiffs, Markwood Investments, Ltd. and Golden Dawn Corporation on the one hand, and the Debtor/Defendant, Fabrizio Dulcetti Neves on the other, in and out of court, have transpired over many years and across various venues. The procedural issues that developed in the course of this Adversary Proceeding have generated their own

history of rulings—written and otherwise.[1]  Two of the many disputes that arose during the course of the case were the Plaintiffs' Motion for Leave to Take *De Bene Esse* Deposition (the "*De Bene Esse* Motion"),[2] which was denied by oral ruling on December 23, 2013,[3] and the Plaintiffs' Motion for Permission to Allow Salvador Frieri to Testify at Trial by Contemporaneous Transmission as a Fact Witness Pursuant to Rule 43 of the Federal Rules of Civil Procedure (the "Trial Video Motion"),[4] which was denied by oral ruling on February 12, 2014[5] (collectively, the "Frieri Motions").

This Memorandum Opinion outlines in more detail the basis for those rulings.  I denied each of the requests because the Plaintiffs made tactical decisions which, viewed in the best light, created a situation that could have been avoided.   In other words, the Plaintiffs were faced with a crisis of their own making.  The critical factors of each ruling relate to the timing of the requests relative to the causative factors giving rise to those requests, as well as the prejudice to the Defendant that such relief would have created.  Because the facts underlying each of the Frieri Motions are virtually the same and foundation of the two rulings connected, both are addressed in this Memorandum Opinion.

## FACTS

From the filing of the original complaint in 2010, Mr. Salvatore Frieri ("Frieri"), the Plaintiffs' principal, was the Plaintiffs' witness in chief.  The underlying issue in each of the Frieri Motions was whether Frieri's inability to travel from Italy to attend the trial warranted my allowing the Plaintiffs to take Frieri's deposition for use at trial, or, after I denied that relief,

---

[1] This matter was finally tried on February 24, 2013 through February 28, 2013.  The final ruling is set forth in a separate opinion.
[2] ECF #774.
[3] *See* Transcript at ECF #813, p. 51.
[4] ECF #831.
[5] *See* Transcript at ECF #905.

2

allowing Frieri to appear at trial through a contemporaneous video feed. In order to understand why I said "no," it is important to understand the timeline under which these issues evolved.

By order dated September 14, 2010,[6] the depositions of the Debtor/Defendant, Fabrizio Dulcetti Neves ("Neves"), and Frieri were to be completed no later than December 17, 2010. Neves took Frieri's deposition over the course of four days in April 2010 and in December 2010, in Miami, Florida. The night before the Plaintiffs were to take Neves' deposition, on or about December 14, 2010, Neves went to Brazil. Finally, in May and June of 2011, the Plaintiffs took Neves' deposition in London, England,[7] because Neves would not—or could not—return to the United States and the Plaintiffs' counsel could not take Neves' deposition in Brazil.

After a long delay caused by various procedural maneuvers on both sides,[8] the case began to move forward again. What followed was a series of events, all relevant to the instant motions and my rulings thereon. Neves filed a motion to take Frieri's deposition. The Plaintiffs filed a Motion for Protective Order,[9] which I heard on March 26, 2012. At that hearing, the Plaintiffs advised me that an arrest warrant had been issued in Colombia against Frieri based on a criminal conviction (which was then on appeal), and that if I were to order Frieri to be deposed, it would need to be by video conference, as he could not travel to the United States due to its extradition laws. Frieri was apparently in Italy at the time.[10] At the hearing on the Motion for Protective Order, I noted that "…for purposes of using those depositions [at trial],[11] whether either one [Neves or Frieri] isn't available, you can argue it to whatever judge is trying the case. . .."[12]

---

[6] ECF #130 at ¶ 4, which amended an order dated September 14, 2010 (ECF #125).
[7] *See* ECF #528, p. 4.
[8] *See* ECF #729 for details.
[9] ECF #528.
[10] Frieri has dual citizenship in Italy and Colombia.
[11] Referring to Neves' deposition or Frieri's deposition
[12] *See* ECF #599.

3

Thereafter, Neves filed a Motion to Compel Mediation,[13] which I granted in July of 2012. But the parties took no further steps towards mediation until the following spring, when Neves returned to the United States and obtained new counsel. There was an unsuccessful mediation, initially scheduled in June 2013, and then in July 2013, which Frieri attended by video conference because he was still under travel restrictions. Although Frieri's conviction had apparently been overturned in Colombia, his passports were confiscated in Italy because of some discrepancy between his Italian passport and his Colombian passport.

Meanwhile, in March 2013, the Plaintiffs filed a Motion to Strike Neves' Pleadings and Request for Evidentiary Hearing (the "Motion to Strike").[14] The Plaintiffs alleged that Neves had purposely hidden documents, which, cumulatively with other issues that had arisen in the case, warranted a default judgment in the Plaintiffs' favor on all counts of the Complaint.[15] An evidentiary hearing on the Motion to Strike was set for July 2013.

On July 2, 2013, Neves filed a Motion to Set Pretrial Conference and All Related Deadlines,[16] seeking to set the case for trial. On July 10, 2013, in the Plaintiffs' Response to Defendant's Motion to Set Pretrial Conference,[17] the Plaintiffs stated that they "condition their agreement to any trial date on Defendant's agreement that Plaintiffs' key witness, Mr. Salvador Frieri, may testify at trial by video in the event he is unable to travel to the United States at the time set for trial."

Ultimately, Frieri's passport issue was resolved. But on July 15, 2013, when Frieri went to the Italian Court to recover his passports, not only were Frieri's passports withheld, but he was

---

[13] ECF #567.
[14] ECF #599.
[15] The Fourth Amended Complaint, ECF #419.
[16] ECF #657.
[17] ECF #660.

arrested by Italian authorities on charges of attempted murder, extortion, and other serious matters, and was placed under house arrest.[18]

On July 16, 2013, Neves filed a Notice of Deposition of Plaintiffs' Corporate Representative, to be taken at his counsel's offices in Miami, which notice specifically identified the corporate representative as Salvatore Frieri.[19] The Notice was issued in connection with the upcoming trial on the Motion to Strike. The Plaintiffs responded in their Motion for Protective Order[20] stating that "[i]f the Court orders a deposition of Mr. Frieri, however, the Court should permit Mr. Frieri to appear by video-conference."[21]

On July 22, 2013, at the hearing on the Plaintiffs' Motion for Protective Order, only days before the scheduled trial on the Motion to Strike, several things occurred. First, the parties discussed at great length the consequence of Frieri's inability to be physically present at the hearing on the Motion to Strike (which situation had existed prior to his house arrest) and, as of July 22, Frieri's virtually complete and total inability to communicate with the outside world. Counsel for the Plaintiffs acknowledged that they would be required to produce a different corporate representative, but who that person should be would require communication with Frieri, which was not then possible. I then asked Plaintiffs' counsel what efforts had been made in the prior year (it having been since March 2012 that Frieri had been subject to one or another travel restriction) to identify another corporate representative in the event Frieri's travel issues could not be timely resolved. The need for such conditional measures would presumably have become a more immediate concern when the Motion to Strike was filed and it became clear a

---

[18] *See* Transcript at ECF #703, p. 36; ECF #813, p. 8-9.
[19] *See* ECF #668.
[20] ECF #675.
[21] At the time the Motion for Protective Order was filed, Plaintiffs' counsel was not yet aware that Frieri was under house arrest, and that he "could have no communication with anyone outside of the house or with anyone other than his Italian court approved lawyer. He could not use a phone, could not use the internet, could not use a computer . . . ." Jose Casal, counsel to the Plaintiffs, at July 22, 2013 hearing. Transcript at ECF #703.

corporate representative would be required at the evidentiary hearing. However, Plaintiffs' counsel provided no explanation other than to repeat the reasons Frieri had been unable to travel since March 2012, which arose from three separate events—the arrest warrant, confiscation of the passports, and the house arrest.

Second, in light of Frieri's inability to travel or communicate, Plaintiffs' counsel asked for a continuance of the trial on the Motion to Strike to "see what happens." I denied the ore tenus Motion to Continue and I denied the Motion to Strike because it was clear that the Plaintiffs were not ready to proceed.[22]

Third, I denied the Motion for Protective Order in part and required that Frieri be deposed based on his personal knowledge about two of the topics that Neves identified as the several topics about which he wished to question Frieri.

Finally, the parties were directed to submit a scheduling order indicating the discovery cutoff and the dates for trial.[23] It took two more months for the parties to submit a Joint Scheduling Order,[24] but finally on September 22, the Joint Scheduling Order was entered, which set a trial date of February 24, 2014 and a December 15, 2013 cut-off for all fact discovery. However, nothing in the Joint Scheduling Order addressed the Plaintiffs' July demand that they would only agree to set a trial date if Frieri could appear at trial by video conference. There was nothing in the Joint Scheduling Order that addressed which dates would be set aside for a deposition by video or otherwise if Frieri could not travel. In sum, the Joint Scheduling Order was silent as to the circumstances surrounding this "critical" witness.

---

[22] Neves' counsel correctly noted that the hearing on the Motion to Strike had been scheduled on April 4, 2013, and yet, Plaintiffs' counsel had made no effort whatsoever (other than to wait and see what would happen) to address the possibility of their key witness and corporate representative being unable to attend.
[23] Transcript at ECF #703.
[24] *See* ECF #722.

I had set a status conference for September 4, 2013. In the Plaintiffs' Motion to Continue that status conference, filed on August 21, the Plaintiffs explained that Frieri's house arrest would not be reviewed by the Italian courts prior to September 15,[25] and, most significantly for purposes of my ruling on the *De Bene Esse* Motion and the Trial Video Motion, that "Mr. Frieri's testimony is crucial for Plaintiffs' case at trial. . . ." and "[w]e will have no new information at the September 4 status conference regarding any change in Mr. Frieri's ability to testify at a deposition (where testimony could be preserved for trial) or his ability to testify at a trial in person or by video."[26]

On September 20, 2013, Neves filed and served an Amended Notice of Deposition of the corporate representative of each of the Plaintiffs, this time without designating a specific person. In response, on October 2, 2013 (one week after the deposition was scheduled to occur), the Plaintiffs filed a Motion for Protective Order Regarding Deposition Notice of Corporate Representatives (the "Motion for Protective Order"),[27] setting forth a variety of objections, but volunteering that, "Mr. Frieri will, when permitted to travel or testify by electronic means, sit for deposition pursuant to the Court's order to answer questions about his personal knowledge relating to the two narrow issues set forth in the Court's July 22nd order."[28]

However, at the October 28, 2013 hearing, the Plaintiffs confirmed that Frieri's situation remained the same—Frieri was under house arrest, unable to speak with anyone except for his Italian counsel. Plaintiffs' counsel stated that they could only communicate with Frieri by passing notes and messages through Frieri's Italian counsel.[29] Nonetheless, at no time, either in

---

[25] The Italian courts apparently close for a month for the summer holidays and would not reopen before that date.
[26] ECF #708.
[27] ECF #726.
[28] *See* ECF #726, p. 2-3.
[29] *Id.* at p. 41.

7

the Motion for Protective Order or at the hearing, did the Plaintiffs attempt to address how to deal with Frieri's possible inability to be physically present at trial.

Finally, on November 18, 2013, the Plaintiffs filed the Motion to Permit Mr. Salvador Frieri to Appear for Deposition by Video Conference and for Issuance of Request to Italian Court for Video Appearance (the "Video Depo Motion").[30]  The Plaintiffs stated that Frieri was still under house arrest in Italy and that he was unable to directly communicate with anyone other than his court-approved Italian counsel,[31] but that, nonetheless, Frieri had successfully appeared by live video feed for an unrelated state court trial and the Plaintiffs wanted to seek the same relief for this trial.[32]  An exhibit to the Video Depo Motion was a letter the state court judge had written to the Italian judge on October 8, 2013, asking the Italian judge to authorize Frieri's attendance by video conferencing at a trial scheduled to begin on October 21, 2013.[33]  The Video Depo Motion requested that I write a letter to the Italian court asking that Frieri be permitted to appear for deposition by video, and that I permit Frieri to appear for deposition by video. Plaintiffs' counsel suggested that if the Italian judge authorized the deposition, and if the video feed worked as it did for the state court trial, then the Plaintiffs would ask me to write another letter asking about using a video feed for trial.[34]

Neves' Objection to Motion to Permit Mr. Salvador Frieri to Appear for Deposition by Video Conference and for Issuance of Request to Italian Court for Video Appearance,[35] pointed out that the Video Depo Motion revealed that Plaintiffs' counsel had been authorized to communicate directly with Frieri on October 16, 2013, a fact that Plaintiffs' counsel never

---

[30] ECF #749.
[31] *See* ECF #749, p. 2.
[32] *Id.* at p. 2-3.
[33] According to Plaintiffs' counsel, the state court trial took place on November 14, 15, and 18.
[34] *See* Transcript at ECF #785, p. 20.
[35] ECF #757.

disclosed to me at any time, including at the October 28 hearing.  Plaintiffs' counsel claims the communication authorization was not inconsistent with what Plaintiffs' counsel represented at the October 28 hearing, since as of that date Holland & Knight had not yet spoken to Frieri directly.[36]  On substantive grounds, Neves' counsel argued, both in the Objection and at the subsequent hearing, that they could not possibly make the necessary arrangements to go to Italy so close to the holiday season to take the deposition, especially in light of the extra arrangements that would need to be made, that they had serious safety concerns,[37] and that they would be highly prejudiced by the last-minute litigation tactic.

At the hearing on the Video Depo Motion, once it became clear that Neves was seeking the deposition of a corporate representative, not necessarily Frieri, the Plaintiffs stated they would no longer seek to authorize Frieri's deposition appearance by video, but only his trial appearance, and so I denied the Video Depo Motion.  On December 5, 2013, only ten days before the agreed upon scheduled discovery cut-off, two and a half years after Frieri's travel woes had begun, almost nine months after Frieri's passports had been confiscated, nearly five months after the Plaintiffs said they would only agree to a trial date if Frieri could appear by video and then Frieri was put under house arrest, and more than two months after initiating a process in state court to use Frieri's testimony through remote access, the Plaintiffs filed the *De Bene Esse* Motion[38] seeking to take Frieri's deposition for the express purpose of preserving Frieri's testimony for trial.  On December 23, 2013, the Court heard argument from both parties

---

[36] The Objection also sought sanctions against Plaintiffs' counsel arguing that the Plaintiffs misrepresented their lack of communication with Frieri, as the Italian court granted permission to Plaintiffs' counsel to speak with Mr. Frieri directly in the separate state court fraud action involving Frieri.  I reserved ruling on that request and stated that I would deal with it after the trial.  I will set a separate hearing on that Motion, notwithstanding that, at the time of this writing, Holland & Knight is no longer counsel to the Plaintiffs.

[37] As I stated at the hearing on December 23, 2013, "whether the fears [regarding Frieri] are real or imagined, they're there, whether he's ultimately found liable or not liable, those accusations have been made…," and that is enough to create a burden on the Defendant.  Transcript at ECF #813, p. 49-50.

[38] *See* Transcript at ECF #813.

on the *De Bene Esse* Motion and Neves' Memorandum of Law in Opposition to the Motion for *De Bene Esse* Deposition.[39]  I denied the *De Bene Esse* Motion at the conclusion of the hearing.

On January 8, 2014, the Plaintiffs filed the Trial Video Motion.  The parties argued the motion and objections on January 23, 2014 and I denied the Trial Video Motion by oral ruling on February 12, 2014.  The parties proceeded to trial and Frieri's testimony was presented solely through the 2010 depositions.

## ANALYSIS

While the Plaintiffs' request for Frieri's appearance by video at trial is governed by a rule of civil procedure and their request for his *de bene esse* deposition is framed by case law, the factors that inform my decision in considering these requests are substantially similar—timing, the circumstances giving rise to the request, and prejudice to the non-moving party.

A *de bene esse* deposition is a deposition that is taken for the purpose of preserving testimony at trial.  Requests for the taking and use of *de bene esse* depositions have come up under a variety of circumstances.  Courts that have considered these requests have focused on a variety of factors including the timing of the request in relation to the discovery cutoff,[40] the

---

[39] ECF #801.

[40] *Kuithe v. Gulf Caribe Maritime*, No. 08-0458-WS-C, 2009 WL 3711553 (S.D. Ala. Nov. 3, 2009) (motion for *de bene esse* deposition denied after discovery closed because the movant knew that the witness was unavailable for at least nine months before the discovery deadline expired, but requested the deposition three months after the deadline); *McDermott v. Liberty Maritime Corp.*, No. 08-CV-1503(KAM)(ALC), 2011 WL 2650200, *3 (E.D. N.Y. July 6, 2011) (motion for *de bene esse* deposition of third party witnesses denied because the moving party knew that the witnesses would be unavailable almost fifteen months prior to the discovery deadline); *George v. Ford Motor Co.*, No. 03 Civ. 7643(GEL), 2007 WL 2398806, *12 (S.D. N.Y. Aug. 17, 2007) (plaintiffs' motion for *de bene esse* deposition denied because the motion could have been filed well before the discovery cutoff but was not filed until after the discovery deadline); *Integra Lifesciences I Ltd. V. Merck*, 190 F.R.D. 556, 559-60 (S.D. Cal. 1999) (court denied defendants' request to depose a third party witness after the discovery period because there was no justification for the late request).  *But see Estate of Gee v. Bloomington Hasp. & Health Care Sys., Inc.*, No. 1:06–cv–00094–TWP–TAB, 2012 WL 729269, at *6 (S.D. Ind. Mar. 6, 2012) ("While discovery is closed under the terms of this court's scheduling order, that order does not prevent a party from memorializing a witness's testimony in order to offer it at trial").

timing of the request in relation to the trial date,[41] and the facts that precipitated or necessitated the request.[42]

The only relevant case on point in the Eleventh Circuit is *Chrysler Int'l Corp. v. Chemaly*, 280 F.3d 1358, 1362 (11th Cir. 2002). In *Chrysler*, the plaintiff argued that the district court erred in issuing a protective order preventing it from deposing a third-party witness in South Africa. The district court initially granted the plaintiff's request to obtain the witness's testimony and set deadlines accordingly. The court later extended the discovery deadline several times. The final discovery deadline was April 25 and the trial was set for July 3. *Id*. at 1360. The plaintiff scheduled the deposition for June 6—one month before trial and over one month after the final discovery deadline expired. *Id*. Accordingly, the defendants moved for a protective order to prevent the plaintiff from taking the deposition, which the district court granted; the plaintiff took the deposition anyway. *Id*. The court, however, denied the plaintiff's request to use the deposition at trial. The plaintiff lost at trial and appealed, arguing that exclusion of the deposition testimony was reversible error. *Id*. at 1359.

The Eleventh Circuit affirmed the district court's decision to grant the motion for protective order and deny use of the deposition at trial. Noting that a trial court has the discretion to control the proceedings before it, including the "pace of litigation," the Eleventh Circuit rejected the plaintiff's argument that a *de bene esse* deposition should not be subject to the same discovery deadlines as other depositions. The Court wrote:

---

[41] *Chrysler Int'l Corp. v. Chemaly*, 280 F. 3d 1358, 1362 (11th Cir. 2002) ("…it is appropriate that the district court consider all the circumstances, including fairness to the adverse party and the amount of time remaining before the date set for trial"); *Dopson-Troutt v. Novartis Pharm. Corp.*, No. 8:06-CV-1708-T-24, 2014 WL 408050, at *2 (M.D. Fla. Feb. 3, 2014) (the court granted the motion to take a *de bene esse* deposition because seven weeks before trial was determined to be "ample" time to take the deposition).

[42] *RLS Assoc. LLC v. United Bank of Kuwait PLC*, No. 01 Civ. 1290(CSH), 2005 WL 578917 (S.D. N.Y. Mar. 11, 2005) (court granted movant's request to take *de bene esse* deposition of one of the defendant's employee who took a job in Dubai and advised that he could not travel to testify; there was no issue of delay by the movant or anticipated unavailability of the witness).

> In allowing or disallowing a deposition to be taken for use at trial, it is appropriate that the district court consider all the circumstances, including fairness to the adverse party and the amount of time remaining before the date set for trial. The district court can set a definite time limit for the taking of the very deposition it is permitting to be taken. And the district court can make that time limit the same as the time limit for discovery depositions. Nothing about this approach to the setting of time limits is inherently unlawful.

*Id*. at 1362.[43]

In this case, I ruled on December 23, 2013 that the Plaintiffs had been on notice for almost two years that their key witness had travel issues. The first problem—the arrest warrant in Colombia—did not resolve itself for almost a year, yet at no time during that year did the Plaintiffs take any steps to preserve the testimony of their prime witness. The second problem only lasted a few months, but arose during the time that the Plaintiffs had filed a case dispositive motion and a court-ordered mediation was pending;[44] and still, the Plaintiffs took no steps to preserve the testimony of their primary witness. And, even when the third problem arose—the house arrest—the Plaintiffs made the tactical decision not to seek my assistance in approaching the Italian judge in order to preserve Frieri's testimony for this trial, but rather, decided to focus on the state court trial and to conceal those efforts from me. Had the Plaintiffs approached me at the same time they approached the state court judge, and received authority from the Italian judge to have access to Frieri for purposes of this trial as well, the Plaintiffs and Neves would have had ample time to arrange for Frieri's *de bene esse* deposition. Instead, the Plaintiffs waited until the middle of the holiday season, just before the Christmas holidays, and less than

---

[43] The Eleventh Circuit observed that, in addition to several warnings to the parties about discovery deadlines and the need to take all depositions before the discovery cutoff, the plaintiff had known since the inception of the proceeding that the key witness was located in South Africa, and, in fact, had obtained an order from the district court that was submitted to South African authorities as a requirement for the deposition to occur. The South African authorities did not approve the taking of the deposition until close to the discovery deadline, which was the apparent cause of the delay but, nonetheless, the Eleventh Circuit held that the district court judge had not abused his discretion.

[44] I recognize that the Plaintiffs may not have felt the need to concern themselves with Frieri's presence at the Motion for Sanctions hearing, but the fact that the trial had to be canceled after several months and thousands and thousands of dollars in legal fees demonstrates that Frieri's presence was indeed significant.

12

two months before the trial, a trial that was scheduled for five days, and had been scheduled since September. Moreover, the deposition would have required logistical preparations, both for the substance of the deposition and the physical logistics of the deposition, including venue and security. Thus, the deposition might have been physically possible to arrange, but it would have put a tremendous strain on resources under a shortened period of time—all of which would have been completely avoidable had the Plaintiffs' counsel, at any time during the prior twenty-one months, taken steps to avoid the situation with which they were confronted in December 2013. Under the framework dictated by the Eleventh Circuit in *Chrysler*, I denied the *De Bene Esse* Motion.[45]

Although I denied the *De Bene Esse* Motion at the hearing on December 23, 2013, the Plaintiffs did not file the Trial Video Motion until January 8, 2014—more than two weeks later. Federal Rule of Civil Procedure 43(a), made applicable to this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure Rule 9017, provides that "[f]or good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." The 1996 Amendment Advisory Committee Notes on Rule 43(a) state:

> The most persuasive showings of good cause and compelling circumstances are likely to arise when a witness is unable to attend trial for unexpected reasons, such as accident or illness, but remains able to testify from a different place. . ..
>
> A party who could reasonably foresee the circumstances offered to justify transmission of testimony will have special difficulty in showing good cause and the compelling nature of the circumstances. Notice of a desire to transmit testimony from a different location should be given as soon as the reasons are known, to enable other parties to arrange a deposition, or to secure an advance ruling on transmission so as to know whether to prepare to be present with the witness while testifying.

---

[45] The Joint Pretrial Order also stated that discovery would be allowed after the discovery cut-off date "only upon a showing of good cause and exceptional circumstances."

As I ruled with the *De Bene Esse* Motion, and as Neves noted in his objection to this last motion, there were no compelling circumstances because there was no surprise that Frieri would be unavailable for trial. *Accord Air Turbine Tech., Inc. v. Atlas Copco AB,* 217 F.R.D. 545 (S.D. Fl. 2003).

In *Niemeyer v. Ford Motor Co.*, a case procedurally similar to this case, the plaintiffs filed a motion to preserve testimony of a witness after the close of discovery which the Court did not permit, commenting that the plaintiffs "quandary" was of plaintiffs' "own making." No. 2:09-CV-2091 JCM (PAL), 2012 WL 5199145, *1 (D. Nev. Oct. 18, 2012). Thereafter, the *Niemeyer* plaintiffs sought relief from the court under Rule 43—seeking authority for remote contemporaneous transmission of the witness' testimony. Like the Plaintiffs here, the plaintiffs in *Niemeyer* chose not to depose their witness during the discovery period. *Id.* at *4. The court held that Rule 43 truly "means 'for good cause in compelling circumstances,'" citing the Advisory Committee Notes stating that the most persuasive showings of good cause and compelling circumstances are when a witness is unavailable for trial because of "*unexpected reasons such as accident or illness*." *Id.* at *2 (citations omitted) (emphasis in original). The court also expressed concern over the prejudice to the defendant who might not know in advance which documents were relevant to the testimony, but the defendant would nonetheless be forced to provide all documents in advance of the trial to the witness and opposing counsel. *Id.* at *3. Because the plaintiffs could have foreseen the unavailability of the witness, the Rule 43 relief was denied. *Id.* In closing, the court repeated that while it might sympathize with the plaintiffs' "quandary," nonetheless "it remained true that the "quandary" was "of plaintiffs' own making." *Id.* at *4.

I advised the parties after the hearing on January 29, 2014 that I would likely deny the Trial Video Motion, which I did on February 12, 2013.[46] I explained in my bench ruling that "there were no compelling circumstances that could not have been resolved in a very timely manner and in a way that would have given all the parties plenty of time to institute what would have been appropriate safeguards."[47]

## CONCLUSION

There are circumstances that make it difficult for parties to have live witnesses at trial. The Federal Rules of Civil Procedure, applicable in bankruptcy by virtue of the Federal Rules of Bankruptcy Procedure, provide a framework for parties to obtain and preserve testimony by other means. Those same rules, and judge made law, also provide relief when unforeseen problems arise. But, the rules are not designed to relieve parties from the consequences of poor planning or bad tactical decisions, especially when such relief will have adverse consequences for the other party or parties in the case. The Plaintiffs made a conscious choice to wait until the last possible moment to deal with the unavailability of their key witness. They did so at their own peril. For the reasons stated on the record, and as more fully detailed in this memorandum opinion, the Motion for *De Bene Esse* Deposition and the Trial Video Motion are **DENIED**.

# # #

Copies furnished to:
Joanne Gelfand, Esq.

*Attorney Gelfand shall serve a copy of this Order upon all interested parties and file a Certificate of Service with the Clerk of Court.*

---

[46] This Memorandum Opinion is the written ruling that I promised at that hearing.
[47] ECF #905, p. 5.