*Tagged opinion*



**ORDERED in the Southern District of Florida on May 2, 2017.**

**Laurel M. Isicoff**
**Chief United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: | CASE NO. 09-33043-BKC-LMI |
| FABRIZIO DULCETTI NEVES, | Chapter 7 |
| Debtor._____/ | |
| MARKWOOD INVESTMENTS LTD., and GOLDEN DAWN CORPORATION, | ADV. NO. 10-2122-BKC-LMI |
| Plaintiffs,
vs. | |
| FABRIZIO DULCETTI NEVES, | |
| Defendant._____/ | |

**<u>MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S
REQUEST FOR COMITY</u>**

This matter came before me for the last time on January 17, 2017,[1] on Defendant Fabrizio Dulcetti Neves' (the "Defendant" or "Neves") Supplemental Objection to Plaintiff's Ex-Parte Motion for Writ of Execution and Memorandum of Law in Support of Objection and Request for International Comity (ECF #1375) (the "Comity Motion") and Motion of the Plaintiffs' Markwood Investments Ltd. ("Markwood") and Golden Dawn Corporation ("Golden Dawn") (collectively the "Plaintiffs")[2] to Deny Comity, to Lift Temporary Stay, and to Strike Notice of Satisfaction of Final Judgment and Amended Final Judgment (ECF #1448) (the "Comity Objection").

The dispute before me today is whether to give comity to a Sequestration Order dated October 31, 2014 (the "Sequestration Order"), issued by the Civil and Criminal Court of Rome, Unit for the Application of Preventive Measures against Harmful Persons (the "Italian Court"), in connection with a criminal proceeding pending in Italy, and to consider what impact comity would have on events flowing from that Sequestration Order. Most significant for this dispute was the appointment of a judicial administrator to control assets of the named criminal suspects, including control of Markwood and Golden Dawn. Because I find that the Sequestration Order was not rendered by fraud and does not violate American public policy notions of what is decent and just, comity is given to the Sequestration Order, and the consequences flowing therefrom, including the settlement between the Judicial Administrator, Dr. Sebastiani (the "Judicial

---

[1] The first hearing on this dispute was October 28, 2015, the second on January 25, 2016, the third on December 14, 2016, the fourth on December 22, 2016, and the fifth on January 17, 2017.

[2] Because I find that, in accordance with the Sequestration Order only the Judicial Administrator, Dr. Sebastiani, had the authority to act on behalf of the Plaintiffs, the actions taken in this adversary proceeding and in the main case on behalf of the Plaintiffs were not authorized. Rather, these were actions undertaken by Arturo Frieri, seeking to act through, and on behalf of, the Plaintiffs. Nonetheless, to avoid confusion, for purposes of this opinion I will continue to refer to the parties resisting comity as the Plaintiffs.

Administrator") on behalf of Markwood and Golden Dawn, and the Defendant, Neves, of all claims and disputes between them.

## FACTUAL[3] AND PROCEDURAL BACKGROUND

The dispute between Markwood, Golden Dawn, and one of their principals – Salvatore Frieri ("Salvatore") and Neves, spans many years, and culminated in Neves' bankruptcy, his waiver of his bankruptcy discharge, the filing of this adversary proceeding, and, ultimately a five day trial.[4]

After the trial I wrote a detailed opinion and entered judgment in favor of Golden Dawn with respect to two promissory notes, for a total judgment amount of $13,793,141.80 (plus interest), and entered judgment in favor of Neves with respect to a third promissory note, and, most significantly, a fraud claim. (ECF #1014) (the "Memorandum Opinion"); (ECF #1022) (the "Final Judgment"). The original Final Judgment was amended on March 12, 2015 (ECF #1168) (the "Amended Final Judgment"). The Amended Final Judgment entered judgment against Markwood and in favor of Neves with respect to the fraud and other claims asserted by Markwood against Neves, but entered judgment in favor of Golden Dawn in its claims arising under the two promissory notes. Both parties appealed the Amended Final Judgment to the District Court.[5]

The present iteration of this long dispute started when Golden Dawn sought to collect on the Amended Final Judgment, including serving discovery in aid of execution. On October 23,

---

[3] These facts are based on representations of the parties in their various pleadings, on exhibits attached to those pleadings, and on affidavits filed in support of the pleadings. The parties do not dispute the translations of the Italian Court orders referred to in this opinion. Where the facts are disputed, I have noted that dispute.
[4] If the reader is interested in more details on this dispute, the factual background is included in the Memorandum Opinion (ECF #1014).
[5] Case No. 15-21034-MGC The Plaintiffs' Notice of Appeal and Election to Appeal is at ECF #1161 and the Defendant's Notice of Appeal and Election to Appeal is at ECF #1027.

2015, Neves filed the Comity Motion as well as an Omnibus Motion to Stay Action and for Protective Order (the "Motion to Stay")(ECF #1376), alleging that Golden Dawn should not be permitted to pursue collection of the Amended Final Judgment because Golden Dawn and Markwood were now controlled by a judicial administrator appointed by the Italian Court in a criminal proceeding involving Salvatore Frieri.

Despite counsel for Plaintiffs claiming to have no knowledge of such events[6], Neves confirmed that on October 30, 2014, the Italian Court entered the Sequestration Order, which order sequestered and seized the assets of Golden Dawn and Markwood, as well as other assets belonging to Salvatore, who, with his brother, Arturo Frieri ("Arturo"), own Golden Dawn and Markwood. During the pendency of this litigation, Salvatore has always been the self-described control person of Golden Dawn and Markwood, although now Arturo claims that title.

The Sequestration Order also appointed the Judicial Administrator to take possession and control of the seized and sequestered assets. The Sequestration Order was entered pursuant to Italian law known as the "Anti-Mafia Code," which consolidated all existing laws against criminal organizations and established specifically regulated tools to counter criminal organizations including seizure and confiscation of their assets.[7]

The Italian Court ordered the sequestration and seizure based on its preliminary findings that, *inter alia*, the principals of Golden Dawn and Markwood, Salvatore and Arturo (collectively the "Frieris"), were involved in past and ongoing criminal activity including cocaine trafficking, money laundering and tax crimes in Italy, including tax evasion. The Sequestration Order also

---

[6] On February 23, 2015, Neves' counsel informed the Plaintiffs that Neves' counsel had read on an Italian government website that the assets of Golden Dawn and Markwood had been seized. However, counsel for Golden Dawn and Markwood vehemently denied any seizure, although the Sequestration Order had been served on Salvatore Frieri long before that email exchange. The issue was introduced to me on October 23, 2015 when Neves filed his Motion to Stay.
[7] *See* Declaration of Prof. Paola Severino di Benedetto (ECF #1375-3).

4

found that Salvatore, along with Arturo, used Markwood and Golden Dawn in the commission of tax crimes, because, while nominally offshore, the companies' administrative offices and tax residences are in Italy.

Salvatore received notice of the Sequestration Order as evidenced by his signature on the official Notification Report which provided personal service on Salvatore in Italy on or about November 6, 2014. Salvatore had the opportunity to contest the relief set forth in the Sequestration Order, and, in accordance with Anti-Mafia Code procedures, a defense attorney was appointed for him[8].

In response to the Motion to Stay, Plaintiffs argued that the Sequestration Order had nothing to do with the litigation in the United States. "The [Sequestration Order] has no bearing on this proceedings and should be disregarded. . . ." Plaintiffs' Response to Defendant's Omnibus Motion to Stay and For Protective Order (ECF # 1392). Plaintiffs argued that (a) the Sequestration Order was not final, and therefore not subject to comity; (b) the Plaintiffs were not subject to the Sequestration Order, but rather were still controlled by their officers and directors, to wit, Arturo; and (c) the Sequestration Order was not enforceable outside of Italy absent recognition through the criminal treaty process.

After an initial hearing on the Comity Motion and the Motion to Stay in late October[9], and prior to a continued hearing on December 21, Neves apparently reached out to the Judicial Administrator and settled all pending litigation between Neves on the one hand and Golden Dawn and Markwood on the other. Pursuant to the settlement agreement (the "Settlement Agreement") the Judicial Administrator signed a General Release and Satisfaction of Judgment

---

[8] Declaration of Prof. Paola Severino di Benedetto.
[9] I ordered additional briefing on the Comity Motion.

and Withdrawal of Proofs of Claim (ECF #1409) (the "Release") pursuant to which the Judicial Administrator also executed a Satisfaction of Final Judgment and Amended Final Judgment (ECF #1398) (the "Satisfaction of Judgment") and withdrew both proofs of claim filed in Neves' bankruptcy case (the "Bankruptcy Case"). Neves also filed a copy of an order of the Italian Court which order approved the Settlement Agreement[10] and confirmed that the Judicial Administrator "has jurisdiction over the Assets that are the subject of this settlement agreement [the Final Judgment, the Amended Final Judgment and the proofs of claim] inasmuch as the same fall within the scope of the seizure. . ." (ECF #1401-1) (the "Settlement Order").

Arturo, on his own behalf and on behalf of Golden Dawn and Markwood, immediately filed an appeal[11] - a Reclamo - of the Sequestration Order and the Settlement Order, in the Italian Court, which Reclamo challenged for the most part the Judicial Administrator's authority to act on behalf of Markwood and Golden Dawn, including her ability to enter into the Settlement Agreement. Arturo also challenged the appropriateness of the Settlement Agreement, arguing that the Judicial Administrator used the wrong debt amount - $7,430,000 rather than $13,793,141.80, that the Italian Court only considered the amount of funds to be distributed through the bankruptcy process and not the non-dischargeability of the debt, and that the $1,000,000 settlement amount was woefully inadequate given that Neves had misappropriated and hidden hundreds of millions of dollars. Finally, Arturo argued that neither he, Markwood nor Golden Dawn, or their principals, legal representatives or defense counsel, were ever advised the Settlement Agreement was being negotiated or was executed.

---

[10] A copy of the Settlement Agreement has not been filed; Neves claims it is a confidential document. The Plaintiffs sought to have a copy of the Settlement Agreement, but in light of my ruling that the Sequestration Order is the only document for which comity is relevant, it is not necessary for me to detail whether and why Neves did not have to produce the Settlement Agreement

[11] Although the Plaintiffs described the Reclamo initially as an appeal, at a hearing on December 22, 2016, counsel for the Plaintiffs stated that the Reclamo was more in the nature of a motion to reconsider.

At a hearing on December 21, 2015,[12] I cautioned the parties that to the extent the validity of the Sequestration Order was being litigated in Italy I was "not going to be conducting a parallel proceeding here." I stayed all matters relating to this adversary proceeding, including all collection efforts (ECF # 1382); I instructed the parties to keep me advised of the status of the Reclamo, and, once the Italian Court ruled on the Reclamo, to reset a status conference before me.

The Italian Court has now ruled on the Reclamo, and has affirmed, in an order dated March 16, 2016, (the "Reclamo Order"), the validity of the Sequestration Order with respect to the interests of Arturo, and the authority of Dr. Sebastiani as Judicial Administrator to administer the assets of Markwood and Golden Dawn. The Reclamo Order also affirmed the settlement between the Judicial Administrator and Neves, as well as the Settlement Order.

On December 13, 2016, the Plaintiffs filed a Motion to Deny Comity, to Lift Temporary Stay, and to Strike Notice of Satisfaction of Final Judgment and Amended Final Judgment (ECF #1448) (the "Comity Objection").[13] I treated this as an additional response to the Comity Motion, and set a briefing schedule for Neves to file a response. In the Comity Objection, the Plaintiffs now argue that first, Neves has failed to satisfy his burden that the Italian Court had jurisdiction over Arturo, Golden Dawn and Markwood, or over assets located in the United

---

[12] The issue of the effect of the Sequestration Order and the settlement came up at the hearing on the motion of the chapter 7 Trustee of Neves' Bankruptcy Case to approve his settlement with Neves (*see* main case 09-33043-BKC-LMI (ECF Main # 955) for the transcript) because the chapter 7 Trustee and Neves challenged the Plaintiff's counsel's authority to prosecute an objection on behalf of the Plaintiffs to the Trustee's settlement.

[13] At the time the Reclamo Order was entered, the mandate for this adversary proceeding was in the District Court. In response to the Reclamo Order, the District Court, on July 12, 2016, issued an Order to Show Cause requiring the Plaintiffs to explain why the appeals were not moot. On August 5, 2016, over four months after the Reclamo Order was issued and over three weeks after the Order to Show Cause, the Plaintiffs filed a motion to compel in the District Court seeking documents they claimed would prove the Reclamo Order was procured through fraud. Instead of ruling on the Order to Show Cause and the Motion to Compel, the District Court relinquished jurisdiction back to this Court on October 18, 2016. The District Court noted that because "the Reclamo Order was entered by the Italian Court after [the District] Court assumed appellate jurisdiction over this matter," the Bankruptcy Court should "resolve the issues of comity and mootness raised as a result of subsequent proceedings before the Italian Court."

States - the promissory notes, the judgment and the proof of claim; and second, that the policies and procedures of the Anti-Mafia Code, especially the use of *ex parte* communications, are "fundamentally unfair" and "at odds with 'civilized jurisprudence' and 'American public policy notion of what is decent and just'." Moreover, the Plaintiffs argue, the Reclamo Order *may* have been obtained by fraud, because the Italian Court considered *ex parte* submissions, including an affidavit submitted by counsel for Neves, Brian Miller (the "Miller Affidavit"), or at least, based on a mistake, and therefore, because the Reclamo process is unfair, I should not grant comity to the Sequestration Order.

Neves argues that I should grant comity because the Plaintiffs never challenged the entry of the Sequestration Order itself, and Italian judgments are routinely recognized by the United States. Furthermore, Neves argues that once I grant comity to the Sequestration Order, the terms of the Settlement Agreement must be accepted- the dismissal of the appeals, the withdrawal of proofs of claim in the bankruptcy case, and the recognition of the release and satisfaction of the Amended Final Judgment.

## ANALYSIS

Comity is a common law rule by which courts in the United States give deference to foreign judgments. As I wrote in *Talisman v. Mouttet*, 493 B.R. 640 (Bankr. S.D. Fla. 2013),

> In *Hilton v. Guyot*, 159 U.S. 113 (1895) ("*Hilton*") the Supreme Court issued what has been described as the seminal decision on comity. The Supreme Court described comity "neither as a matter of absolute obligation, on the one hand, nor of mere courtesy and good will upon the other but it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." 159 U.S. 163, 164.
>
>   Thus, to determine whether comity is appropriate, this Court must evaluate:

8

(1) whether the foreign court was competent and used proceedings consistent with civilized jurisprudence;

(2) whether the judgment was rendered by fraud;

(3) whether the foreign judgment was prejudicial because it violated American public policy notions of what is decent and just; and

(4) whether to respect the judgment of a foreign tribunal or to defer to parallel foreign proceedings.

*Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1238 (11th Cir. 2004).

493 B.R. at 654-55

Neves has the initial burden, as the proponent of comity, to show that the Italian Court was competent and used proceedings consistent with civilized jurisprudence. *See Bank Melli Iran v. Pahlavi*, 58 F.3d 1406 (9th Cir. 1995). Neves was required to describe the process by which the Sequestration Order was obtained, why that process is not unfair, and why it does not offend the United States' notions of justice.

According to the Declaration of Prof. Paola Severino di Benedetto (ECF #1375-3) (the "Severino Affidavit") the Sequestration Order was issued pursuant to a provision of the Anti-Mafia Code that "applies preventive measures to those who are considered, based on the facts, usually dedicated to criminal trafficking upon proof by the prosecutor with sufficient evidence that the goods or assets have no clear legal origin and are not proportionate to the value/cost and the income reported or alleged by the suspect and his family." *Id*. at 4. According to the Severino Affidavit, defense counsel was appointed for Salvatore and the Italian Court held a hearing at which Salvatore had the opportunity to contest the Sequestration Order. There is no dispute that Salvatore received actual notice of the hearing. There is no record that Salvatore contested the Sequestration Order. According to the Severino Affidavit, the Clerk of Court was charged with serving all formal notices required under the Sequestration Order. Finally, the Severino Affidavit noted that the Anti-Mafia Code "provides for two levels of appeals which allow the

charges to be litigated to try to overturn the seizure order and have the seized property returned."[14]

Assuming Neves has met that burden, the Plaintiffs must prove that the Sequestration Order violates American public policy notions of what is decent and just. *See Bank Melli Iran,* 58 F.3d at 1409.[15] To invoke the public policy exception the judgment must clearly "undermine the public interest, the public confidence in the administration of law, or security for individual rights of personal liberty or of private property. . . ." *See Corporación Mexicana De Mantenimiento Integral, S. De R.L. de C.V. v. Pemex-Exploración Y Producción*, 832 F.3d 92, 106 (2d Cir. 2016) (citations omitted).

I will first address the original concerns raised by the Plaintiffs in objecting to Neves' request for comity - that the Sequestration Order was not final, that the Judicial Administrator did not have the authority to act on behalf of the Plaintiffs, and that because the Sequestration Order is extraterritorial, it is only enforceable through the criminal treaty process.

While comity is not routinely considered for a non-final order - if, in fact, the Sequestration Order was a non-final order for purposes of comity when it was first entered - there is no hard and fast rule. *See Ma v. Continental Bank. N.A.,* 905 F.2d 1073 (7th Cir. 1990); *Daniels v. Powell,* 604 F. Supp. 689, 693 (N.D. Ill. 1985) ("American courts have granted comity to foreign liquidation proceedings regardless of whether a final judgment has been entered"). More significantly, I abated any proceedings in the United States relating to the

---

[14] This process is not unlike the United States civil forfeiture procedures pursuant to which an *ex parte* restraining order may be issued and the property may be seized. While the initial seizure is done *ex parte*, the defendant, as well as third parties claiming an interest in the seized assets, have the right to challenge that seizure after it has occurred. *See* 18 U.S.C. §981; *Calero-Toledo v. Pearson Yacht Leasing Co*., 416 U.S. 663 (1974) ("[i]mmediate seizure of a property interest without an opportunity for a prior hearing, is constitutionally permissible…. Due process is not denied when postponement of notice and hearing is necessary to protect the public from [harm].").
[15] The Plaintiffs have never argued that the Sequestration Order was procured by fraud.

Sequestration Order, including the request for comity, during the Reclamo process. The Italian Court has now ruled, and, according to Plaintiff's counsel, the next move is an appeal, or further appeal, which indicates that the Sequestration Order is now final enough. Any stay of the effect of the Sequestration Order pending appeal must be sought in Italy under whatever procedures are available under Italian law.[16]

The second and third issues originally raised by the Plaintiffs are that, since the Judicial Administrator had not removed the boards of either Golden Dawn or Markwood, the boards, meaning Arturo, rather than the Judicial Administrator, still had the right to act on behalf of Golden Dawn and Markwood. And finally, that because Markwood and Golden Dawn were not Italian companies, the extraterritorial seizure of assets was not authorized through the appropriate criminal treaties. *See Independent Legal Opinion of Lawyer Fulvio Sarzana di S. Ippolito* (the "Sarzana Opinion").[17]

Both these arguments are directly contradicted by the language of the Sequestration Order. The Sequestration Order made a specific finding that, notwithstanding the "domiciles" of Golden Dawn and Markwood, the two corporations "actually had their administrative offices or tax residence … in Italy." In fact, this finding is part of the basis for the preliminary findings that the Frieris were engaged in tax crimes. Because the Italian Court made specific findings that the corporations are "resident" in Italy, the Sequestration Order does not purport to exercise control over assets located outside of Italy. As argued by Neves in his Sur-Surreply in Support of Motion Seeking International Comity (the "Sur-Surreply") (ECF #1466) and conceded by the Plaintiffs at the hearing on January 17, 2017, it is not the role of a United States Court to review

---

[16] I will assume there is no stay in place since the Plaintiffs have not argued that a stay has been entered.

[17] Dr. Sarzana is Arturo Frieri's attorney.

the factual findings of a foreign court. *In re Fisher Island Investments, Inc.*, 2011 WL 6962755 (Bankr. S.D. Fla. 2011). It is the process leading to a judgment or order, not the facts leading to a judgment or order, that dictates the comity determination. Moreover, while it is not appropriate for me, in making a determination of comity, to review the factual findings of a foreign court, *In re Fisher Island Investments, Inc.*, 2011 WL 6962755 at *1, it is telling that the promissory notes, which formed the basis for the Amended Final Judgment, clearly list the primary address of both Golden Dawn and Markwood as being in Italy. Consequently, even if there are circumstances when a sequestration of assets under the Anti-Mafia Code does invoke international criminal treaties, this is not such a circumstance.

As for the issue of authority, the Sequestration Order identified the "shares, share capital and company assets" of, among others, Golden Dawn and Markwood. as sequestered assets, and prohibited Salvatore (as a named suspect), Arturo (as a registered third party) and "legal representatives of the current account and security holders" from "performing any act without the authorization of the Deputy Judge involving, in whole or in part, the removal of the aforementioned assets from the sequestration ordered with this decree." Thus, it is clear that whomever was purporting to act on behalf of Golden Dawn and Markwood, other than the Judicial Administrator, had no authority to act, notwithstanding that the "board" had not been removed by the Judicial Administrator, because no pleading that has been filed in this adversary proceeding or the Bankruptcy Case purportedly in the name of the Plaintiffs has been authorized by the Deputy Judge of the Italian Court.

Moreover, these arguments, raised in the Reclamo, were rejected by the Italian Court in the Reclamo Order. With respect to the issue of authority, the Italian Court found "[t]his Court ordered the sequestration, in their entirety, of the share capital, the shares and the assets of the

companies Golden Dawn Corporation and Markwood Investments Limited. Therefore, the Judicial Administrator is the holder and representative of 100% of the share capital of both societies. Said assets are solely managed by the Judicial Administrator, without the claimants or the third-party formal owners who were subject to the sequestration being able to speak as to the issues." Thus, the original grounds raised by the Plaintiffs challenging comity are overruled.[18]

I will now turn to the grounds raised in the Comity Objection - that the Italian Court lacks jurisdiction of non-Italian citizens or assets in the United States, that the Anti-Mafia Code *ex parte* procedures are manifestly unjust, that is, that the adjudicatory procedures of the preventive measure proceedings of the Anti-Mafia Code, pursuant to which the Sequestration Order was issued, are procedurally unfair, and, finally, that the Reclamo Order may have been obtained by fraud,. I will review these arguments in the framework I established when I abated the comity considerations - that I will not act as a parallel proceeding and that the Italian Court, or higher courts will adjudicate the appropriateness of the Sequestration Order. My consideration is limited solely to whether I should give comity to that order.

It is unremarkable for a federal court to exercise comity to orders appointing trustees and receivers. *See BCCI Holdings (Luxembourg), Societe Anonyme v. Khalil*, 20 F. Supp. 2d 1, 4-5 (D.D.C. 1997) ("The recognition of liquidators or trustees appointed by foreign courts to act as receivers empowered to sue and be sued on behalf of insolvent corporations is neither unusual nor contrary to federal law"). *Massi v. Holden*, 2011 WL 6181258, at *4 (D. Minn. 2011) ("There is a long and consistent precedent of deferring to receivership orders issued by a properly-instituted court of a foreign country that has jurisdiction."). And, in this case, Arturo, acting on his own

---

[18] The Reclamo Order did not specifically address the jurisdictional argument other than to confirm multiple times that Golden Dawn and Markwood and their assets had been sequestered and that the Judicial Administrator had total control over Golden Dawn and Markwood including the obligation to "actively manage" them.

behalf and on behalf of Markwood and Golden Dawn, has not contested the appointment of the Judicial Administrator in the Reclamo, focusing the arguments, instead, on the extent of the Judicial Administrator's authority and the consequences to Arturo's property resulting from that appointment.

The Plaintiffs renewed their argument that, contrary to United States law, the Italian government has improperly exercised jurisdiction over non-Italian citizens.  I do not need to address whether the exercise of extraterritorial jurisdiction so offends notions of justice that the Sequestration Order should not be recognized,  because, as I already described, the Italian Court found, in the Sequestration Order, that Golden Dawn and Markwood,[19] are Italian entities for purposes of exercising jurisdiction.  The Italian Court's cursory and somewhat indirect rejection of this argument in the Reclamo Order does not somehow confer authority on this Court to determine whether the Italian Court's findings of jurisdiction were unfounded.

The Plaintiffs complain that the Sequestration Order was entered in an *ex parte* proceeding and without notice to Arturo, Golden Dawn or Markwood, and thus they were denied due process.  United States courts have repeatedly recognized that *ex parte* procedures used in non-United States courts are not *per se* violative of United States notions of fairness and due process.  "Due process is not violated by the entry of *ex parte* orders, provided that notice and an opportunity to appear and defend are promptly given." *In re Cozumel Caribe, S.A. de C.V.*, 482 B.R. 96, 116 (Bankr. S.D.N.Y. 2012).  So for example, in *In re Petroforte Brasileiro de Petroleo Ltda*., 542 B.R. 899 (Bankr. S.D. Fla. 2015), the court rejected the complaining parties' argument

---

[19] The Sequestration Order also stated that Arturo was living with Salvatore, a finding that Arturo did not contest in the Reclamo, except to argue, without reference to any exhibit, that Arturo is a resident of Colombia and had not been in Italy for 15 years.  However, since Arturo did file the Reclamo, and, according to the Plaintiffs' lawyers, Arturo also litigated the scope of the Sequestration Order in a Swiss court proceeding, Arturo has certainly had adequate notice of, and has been heard on, the Sequestration Order.

14

that a foreign proceeding should not be recognized under Chapter 15 because the Brazilian court order consolidating non-debtor entities with the Brazilian debtor had been entered *ex parte*.  The bankruptcy court noted that the complaining parties had had the opportunity to appeal and present evidence in the Brazilian bankruptcy proceeding.  *See also In re OAS S.A.,* 533 B.R. 83 (Bankr. S.D.N.Y. 2015); *In re Enercons Virginia, Inc.*, 812 F.2d 1469, 1472 (4th Cir. 1987).  And, as noted in *In re Cozumel Caribe* and *In Re OAS S.A.*, United States courts also enter orders on an *ex parte* basis in many types of proceedings, all of which are considered consistent with due process, so long as affected parties are given notice after the fact and an opportunity to object.[20], [21]

The Plaintiffs also point to the *ex parte* considerations relating to the Settlement Agreement and the Italian Court's deliberations in connection with the Reclamo as being further evidence that due process was not met.  However, the process following entry of the Sequestration Order, that is, the Settlement Order and the Reclamo Order, are both subject to appeal, although, for purposes of my comity decision, the availability of those remedies is not relevant. The decision in *In re Enercons Virginia, Inc.*, 812 F.2d at 1472, is instructive.  There, the Italian trustee of a bankruptcy estate filed an action seeking a declaratory judgment that only he had the power to represent the bankrupt entity.  *Id.* at 1471.  When the bankrupt's creditors attempted to challenge the trustee's authority, the trustee obtained an order from the Italian court "clarifying that under Italian law, he, as bankruptcy trustee . . . had ex parte exclusive authority" to represent the entity.  *Id.* at 1471.

---

[20] *See supra* note 14 (discussing civil forfeiture proceedings). *See also* Bankr.R.Civ.P. 2004 (requests for 2004 exams are usually filed and granted *ex parte*); Fed.R.Civ.P. 65(b) (temporary restraining orders may be issued without written or oral notice if certain requirements are met).

[21] The United States has also extradited defendants under both the predecessor to the Anti-Mafia Code, *Lo Duca v. United States*, 93 F.3d 1100 (2d Cir. 1996), and the current Anti-Mafia Code, *United States v. Amabile*, 2015 WL 4478466 (E.D.N.Y. July 16, 2015), evidencing some level of confidence by the United States courts in the procedural safeguards of the Anti-Mafia Code.

The creditors argued that the Italian order should not be granted comity because the "proceeding failed to satisfy the American notion of due process" as it was issued *ex parte* and because the creditors "received no notice or opportunity to be heard until the time for appeal of the [o]rder had passed." *Id.* at 1473. The court determined that the subsequent *ex parte* order was irrelevant to the court's inquiry because the order to which the trial court actually granted comity was the "original [o]rder of the Italian court in which it first appointed" the trustee. *Id.* The later *ex parte* order "merely clarified the exclusive authority of [the trustee] inherent in his appointment." *Id.* Thus, the later order was "insignificant in and of itself because it merely clarifies the effect of [the trustee's] earlier appointment." *Id.*

In this case, the Sequestration Order itself, including the appointment of the Judicial Administrator, was never challenged in Italy. Rather the focus of the Reclamo was the Judicial Administrator's authority under the Sequestration Order to act on behalf of Golden Dawn and Markwood, to enter into the Settlement Agreement without notice to Arturo, Golden Dawn or Markwood, and whether the amount paid under the Settlement Agreement was disproportionately small in relation to the value of the released claims. Like the *ex parte* order in *Enercons*, the Reclamo Order confirmed the authority of the Judicial Administrator over Golden Dawn and Markwood, as well as her sole, and subject only to the Italian Court's approval, absolute authority to enter into the Settlement Agreement. Thus, while the Reclamo Order certainly bolsters the granting of comity to the Sequestration Order, the Reclamo Order did not alter or amend the Sequestration Order, nor does it impact my considerations under *Hilton* and *Ungaro-Benages* with respect to the comity decision.

The Plaintiffs also argue that I should not give comity to the Sequestration Order because the Reclamo Order may have been obtained by fraud[22]. The Plaintiffs argue that the findings of the Italian Court in the Reclamo Order that the one million Euro paid in exchange for the Release was reasonable in light of the anticipated distribution from the Bankruptcy Case, indicates that the Italian Court either misunderstood, or, by virtue of its reference to the Miller Affidavit, was actively misled, regarding the collectability of the Amended Judgment. However, the Reclamo Order is not the order for which Neves seeks comity. Moreover, the Reclamo Order is part of the Italian court process, the process through which the Sequestration Order is to be reviewed. [23] If the Plaintiffs believe that the Reclamo Order was obtained by fraud or improvidently entered, then the Plaintiffs need to pursue that argument through the Italian court system.

What the Plaintiffs really seek is to avoid the consequences of the Settlement Agreement - the withdrawal of the proofs of claim, the Satisfaction of Judgment and the Release. And, of course, that was the primary focus of the Reclamo, each and every point of which was specifically rejected in the Reclamo Order. But, even if there was, as Plaintiffs allege, fraud in the settlement process, or in the Italian Court's review of the Settlement Agreement, that is an issue for the Italian courts. Courts have repeatedly granted comity to foreign settlements, even where a party alleged fraud in the settlement or secret negotiations. For example, in *Fleeger v. Clarkson Co. Ltd*., 86 F.R.D. 388, 393 (N.D. Tex. 1980), the court granted comity to a settlement effectuated by a Canadian receiver, where the settlement was approved by the Canadian court. The *Fleeger* court noted "[i]f, as

---

[22] The Plaintiffs have never alleged any fraud in connection with the Sequestration Order.
[23] Because of the serious nature of the accusations leveled by the Plaintiffs with respect to the Miller Affidavit, I reviewed a copy of the Miller Affidavit *in camera*. And while my review is not relevant to my ruling, I find that the accusations are not well-founded, as the affidavit is consistent with how it is characterized in the Reclamo Order. However, neither my review nor my conclusion is intended to influence the Italian courts if they undertake any further review of the Sequestration Order, the Reclamo Order or the Settlement Order, as they will independently assess whatever evidence is put before them.

Plaintiff alleges, Defendants have worked a fraud upon the Supreme Court of Ontario, that court is the appropriate forum to decide that allegation." *Id.* Similarly, in *Applewhaite v. the SS Sunprincess*, 150 F. Supp. 827 (S.D.N.Y. 1956), the court granted comity to settlements negotiated without notice to the aggrieved party where those settlements were approved by a Barbados court. *Id.* at 828 ("[A]s the Colonial Court of Admiralty in Barbados has approved these settlements, such action need not be re-examined here because of considerations of international comity and expediency . . . If, as the proctors for the libellants claim, the settlements were procured in part by fraudulent misrepresentation, they may seek redress for their grievances by resort to the courts of Barbados").[24]

In sum, this Court's recognition of the Sequestration Order does not violate, but rather is consistent with, United States public policy of what is decent and just. First, the Italian Court is competent and utilizes proceedings consistent with civilized jurisprudence. Second, the Sequestration Order was not obtained by fraud but was entered as part of a criminal proceeding brought by the Public Prosecutor of Rome in accordance with Italy's Anti-Mafia Code. Finally, Salvatore Frieri was personally served with the Sequestration Order shortly after it was entered and had the opportunity to be heard. And Arturo Frieri has had the opportunity, and has availed himself and will, according to his counsel, continue to avail himself of the opportunity, to challenge the Sequestration Order with respect to his assets.

---

[24] In the Sur-surreply Neves raised, for the first time, the act of state doctrine. The act of state doctrine is a judicially-created rule that "precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory." *Glen v. Club Mediterranee, S.A.*, 450 F.3d 1251, 1253 (11th Cir. 2006). While this argument may be correct, because I have granted the request for comity, I do not need to address either the applicability or the timeliness of this argument.

## CONCLUSION

There comes a time when all things must end.[25] Perhaps, with this ruling, the Frieri/Neves dispute will finally take leave of the federal courts of the United States. But whether that is so, for purposes of this case, and for the reasons set forth in this Memorandum Opinion -

    a.    Neves' request for granting comity to the Sequestration Order is GRANTED.

    b.    The Plaintiffs' Request to Deny Comity is OVERRULED.

    c.    The Release is effective and enforceable.

    c.    The Satisfaction of Judgment is valid.

    d.    The withdrawal of the proofs of claim filed by Golden Dawn and Markwood in the Bankruptcy Case are recognized.

    e.    The parties are ordered to proceed in the appellate courts consistent with the terms of this Order.

# # #

Copies furnished to:
Brian Miller, Esq.

    Attorney Miller shall serve a copy of this Order upon all parties in interest and file a certificate of service with the Clerk of Court.

---

[25] With a nod and apologies to Geoffrey Chaucer.